UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| AMBER S.,[1] | : | Case No. 2:22-cv-2240 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Amber S. brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #6).

**I.     Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1),

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively filed her applications for Disability Insurance Benefits and for Supplemental Security Income benefits in February 2018, alleging disability due to several impairments, including obsessive compulsive disorder (OCD), post-traumatic stress disorder (PTSD), depression, and anxiety. (Doc. #6-6, *PageID* #394). After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) John Loughlin. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] He reached the following main conclusions:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since January 1, 2018, the amended alleged onset date. |
| Step 2: | She has the following severe impairments: a neurocognitive disorder, a major depressive disorder, a generalized anxiety disorder, an obsessive-compulsive disorder, and insomnia. |
| Step 3: | She does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consist of "a full range of work at all exertional levels but with the following non-exertional limitations: She can understand and remember simple instructions, make simple work related decisions, carry-out simple instructions, can follow one-or-two step oral instructions, can occasionally |

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

|  |  |
|---|---|
|  | deal with changes in a routine work setting, and can occasionally deal with coworkers, but can never deal with the public." |
|  | She is unable to perform any past relevant work. |
| Step 5: | Considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. |

(Doc. #6-2, *PageID* #s 89-98). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since January 1, 2018. *Id.* at 98.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #6-2, *PageID* #s 86-98), Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), and Plaintiff's Reply (Doc. #10). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

**II.     Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.     Discussion**

Plaintiff argues that the ALJ erred by not properly evaluating the opinions of Plaintiff's counselor, Stephen Scrimenti, Ph.D. and the consultative psychologist, Nicolaas Dubbeling, Ph.D. (Doc. #7, *PageID #s* 650-58). The Commissioner maintains that the ALJ properly discussed the persuasiveness of each opinion, such that he considered the supportability and consistency of all the statements, including the statements of the treating providers. (Doc. #9, *PageID* #s 672-82).

Since Plaintiff filed her applications after March 27, 2017, they are governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017). A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in her case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight,

to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 404.1520c(b)(2).

While these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set

forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

Here, Plaintiff first challenges the ALJ's review of the medical opinions provided by her counselor, Dr. Scrimenti. (Doc. #7, *PageID* #s 651-56). In addition to the medical records submitted from his treatment of Plaintiff, (Doc. #6-7, *PageID* #s 467-483, 511-20, 537-39), Dr. Scrimenti completed a medical impairment form where he indicated that Plaintiff retained limited ability to understand and remember very short and simple instructions; carry out very short and simple instructions; sustain an ordinary routine without special supervision; and make simple work-related decisions. (Doc. #6-7, *PageID* #535). He further noted that Plaintiff was seriously limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods and that she was unable to meet competitive standards in her ability to remember work-like procedures and maintain attention for a two-hour segment. *Id*. Additionally, Dr. Scrimenti found that Plaintiff had no useful ability to function in the areas of maintaining regular attendance and being punctual within customary, usually strict tolerances; working in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from

supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; responding appropriately to changes in a routine work setting; and dealing with normal work stress. *Id*. In support of these findings, Dr. Scrimenti explained that Plaintiff "experiences intense [and] extreme anxiety within her household [and] especially outside her home [and] in the community to the point of debilitation." *Id*. Regarding her ability to do semiskilled and skilled work, Dr. Scrimenti reported that Plaintiff "has intense occupational stress/anxiety related to any work." *Id*. at 536.

Dr. Scrimenti also opined that while Plaintiff had an unlimited or very good ability to adhere to basic standards of neatness and cleanliness, she had no useful ability to function in the areas of interacting appropriately with the general public; maintaining socially appropriate behavior; travelling in an unfamiliar place; and using public transportation. *Id*. Here, Dr. Scrimenti explained that Plaintiff "cannot interact appropriately with the general public, maintain socially appropriate behavior or travel publicly in unfamiliar places due to extreme anxiety." *Id*. Lastly, Dr. Scrimenti opined that her impairments and treatment would cause her to be absent more than four days per month. *Id*.

Upon review, the ALJ found that Dr. Scrimenti's opinion was "unpersuasive." (Doc. #6-2, *PageID* #95). In reaching this conclusion, the ALJ declared that Dr. Scrimenti's findings were "largely unsupported by his own treatment notes, many of which are cited in the prior finding." *Id*. (citing Doc. #6-7, *PageID* #s 467-483, 511-17, 518-20, 537-39). He also found that Dr. Scrimenti's opinions were "inconsistent with the rest of the previously-described evidence, and the record as a whole." *Id*. In this regard, the ALJ pointed out that Dr. Scrimenti's conclusion that Plaintiff is

unable to meet competitive standards in the area of remembering work-like procedures to be "remarkably inconsistent with the previously-described evidence, which establishes no more than a mild memory limitation." *Id*. The ALJ then reiterated his prior finding that "the record does not establish that [Plaintiff's] impairments generate a marked or extreme limitation in any broad area of mental functioning, whereas Dr. Scrimenti's findings would require a finding of marked or extreme limitation in each of these areas." *Id*.

As noted above, Plaintiff contends that the ALJ erred by not following the relatively new regulations regarding the assessment of medical opinions when evaluating Dr. Scrimenti's opinions. (Doc. #7, *PageID* #s 650-56). Specifically, she points out that the regulations require the ALJ to articulate his consideration of the supportability and consistency factors for each medical opinion and that the ALJ merely provided a conclusory and unsupported analysis of these factors when assessing Dr. Scrimenti's opinions. *Id*.

Plaintiff's argument is well taken. As an initial matter, the plain language of the regulation is unquestionably clear that an ALJ must "set forth a 'minimum level of articulation'" as to how she considered the supportability and consistency factors for a medical's source's opinion. *Warren I*, 2021 WL 860506, at *8; 20 C.F.R. § 404.1520c(b) ("We *will* articulate in our determination or decision how persuasive we find all of the medical opinions ... in your case record[.]") (emphasis added); 20 C.F.R. § 404.1520c(b)(2) ("[W]e *will* explain how we considered the supportability and consistency factors for a medical source's medical opinions ... in your determination or decision.") (emphasis added). Indeed, while the regulations allow an ALJ flexibility as to whether he needs to discuss the other factors weighing on the persuasiveness of a medical opinion, they

8

mandate that the ALJ set forth his rationale on what are deemed to be the two most important factors—supportability and consistency. *See id*.

Moreover, in assessing these factors, it is not enough for the ALJ to simply declare that an opinion is unsupported or inconsistent with the evidence; rather, such a determination must be supported by substantial evidence. In this case, the ALJ found that Dr. Scrimenti's opinion to be unpersuasive as it was "largely unsupported by his own treatment notes, many of which are cited in the prior finding." (Doc. #6-2, *PageID* #95) (citing Doc. #6-7, *PageID* #s 467-83, 511-17, 518-20, 537-39). While it is true that an ALJ does not have repeat the same findings that are contained elsewhere in the decision, s*ee Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (finding that the ALJ's review of a medical opinion should be considered by viewing the decision as a whole), the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Comm'r of Soc. Sec.*, 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999). *See also Hurst v. Sec'y. of Health and Human Services*, 753 F.2d 517 (6th Cir. 1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) No. 82–62, 1982 WL 31386, at *4 (Soc. Sec. Admin. Jan. 1, 1982) (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

In this case, the ALJ's evaluation of Dr. Scrimenti's opinions does not build an accurate and logical bridge between the evidence and his conclusion. Indeed, a review of the ALJ's prior

9

findings and Dr. Scrimenti's treatment notes does not reveal the inconsistencies alleged by the ALJ. For instance, in his "prior finding[s]", the ALJ repeatedly relies on the fact that Plaintiff's "treating and examining providers" have frequently documented her exhibiting "unremarkable" or "normal" mental functioning. (Doc. #6-2, *PageID* #s 91-92). Notably, however, of the records cited by the ALJ, (Doc. #6-7, *PageID* #s 479, 490, 495, 524, 527, 530, 534, 542, 547, 553, 572), only one was from Plaintiff's treatment with Dr. Scrimenti. *Id*. at 479. Further, while this record shows some "not remarkable findings," such as Plaintiff's appearance, posture, speech, perceptions, and hallucinations, it also shows a number of abnormal findings, including, anxious behavior, difficulty acknowledging issues, difficulties making life decisions, difficulties managing daily living, and impaired recent and remote memory. *Id*.

Similarly, while the ALJ broadly cites to all of Dr. Scrimenti's treatment records as the basis for finding his opinions to be unsupported, it is unclear what in the treatment notes the ALJ believes undermines Dr. Scrimenti's findings. In fact, a review of these records appears to support Dr. Scrimenti's opinions. For example, Dr. Scrimenti's treatment records document that Plaintiff routinely exhibited anxiety and depression, (Doc. #6-7, *PageID* #s 470, 472, 479, 481, 511, 514, 518, 519, 537, 538); was "fearful of new people and large crowds[,]" (*Id*. at 475); had difficulties acknowledging issues, making decisions, and managing daily living, (*Id*. at 479); had impaired recent and remote memory, (*Id*.); and had issues sleeping, (*Id*. at 480, 481, 511). Thus, to the extent that the ALJ cited these records to support his finding that Dr. Scrimenti's treatment records do not support the functional limitations he provided, the ALJ has mischaracterized these records. As a result of this mischaracterization, the ALJ's supportability determination is not supported by

10

substantial evidence. *See Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (remand required, in part, because the ALJ was "selective in parsing the various medical reports"); *Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes."). Accordingly, as the ALJ's decision is not supported by substantial evidence, Plaintiff's Statement of Errors is well taken.[3]

### IV. Remand

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may

---

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to a remand of this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income should be granted.

## IT IS THEREFORE ORDERED THAT:

1. Plaintiff's Statement of Errors (Doc. #7) is **GRANTED;**

2. The Commissioner's non-disability finding is **VACATED**;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

5. The case is terminated on the Court's docket.


September 26, 2023 *s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge